UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 6, 2012
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MASAHIRO NAKAHATA, et al.,                :
                                          :
                        Plaintiffs,       :
                                          :    11 Civ. 6658 (PAC)
          - against -                     :
                                          :    OPINION & ORDER
NEW YORK-PRESBYTERIAN                      :
HEALTHCARE SYSTEM, INC., et al.,          :
                                          :
                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
PATRICIA MEGGINSON,                       :
                                          :
                        Plaintiff,        :    11 Civ. 6657 (PAC)
                                          :
          - against -                     :
                                          :
WESTCHESTER MEDICAL CENTER, et al.,       :
                                          :
                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
OLUSOLA ALAMU, et al.,                    :
                                          :
                        Plaintiffs,       :    11 Civ. 6366 (PAC)
                                          :
          - against -                     :
                                          :
THE BRONX-LEBANON HOSPITAL                 :
CENTER, INC., et al.,                     :
                                          :
                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Here we go again.  Three different sets of plaintiffs, represented by the same law firm,

bring Fair Labor Standards Act and New York Labor Law claims against hospitals and related

health care entities.  As before, all contain strikingly similar allegations.  These actions represent

merely three of a dozen similar actions that plaintiffs' counsel has initiated in district courts

around the country.  See Manning v. Boston Med. Ctr. Corp., No. 09–11463–RWZ, 2012 WL

1355673, at *8 nn.9, 10 (D. Mass. Apr. 18, 2012) (citing cases).  This Court previously

dismissed a dozen separate claims these plaintiffs asserted against these defendants in three

earlier actions.  See Nakahata v. New York–Presbyterian Healthcare Sys., Inc., No. 10 Civ.

2661, Yarus v. New York City Health and Hosp. Corp., 10 Civ. 2662, Megginson v. Westchester

Med. Ctr., 10 Civ. 2683, Alamu v. Bronx-Lebanon Hosp. Ctr., Inc., 10 Civ. 3247, 2011 WL

321186 (S.D.N.Y. Jan. 28, 2011).  Plaintiffs appealed the dismissal to the Second Circuit.

During the pendency of the appeal, however, plaintiffs instituted these new actions.

     Plaintiffs again bring putative collective and class actions,[1] seeking to recover unpaid

wages allegedly due to hourly employees for work performed during meal breaks, pre- and post-

shift, and for attending training sessions.  Plaintiffs maintain that they were denied applicable

premium pay and overtime in violation of the Fair Labor Standards Act ("FLSA") and New York

Labor Law ("NYLL").  Defendants move to dismiss, arguing that plaintiffs' new actions fail to

correct many of the previously delineated inadequacies.  Specifically, defendants argue that: (1)

plaintiffs fail to adequately plead their FLSA and NYLL claims; (2) the FLSA and NYLL claims

are barred by Section 301 of the Labor Management Relations Act ("LMRA"), because

---

[1]  Each Complaint defines the class to include "those employees of defendants who were suffered or
permitted to work by defendants and not paid their regular or statutorily required rate of pay for all
hours worked," and further specifies that the allegations extend to all "hourly employees . . . such as
secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses,
transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical
underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional
staff nurses, quality coordinators, resources pool nurses, respiratory therapists, senior research
associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs,
trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists,
physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians,
CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists,
radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care
practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical
case managers, midwives, and other health care workers" (See Alamu Compl. ¶¶ 94, 126; Megginson
Compl. ¶¶ 80, 112; Nakahata Compl. ¶¶ 74, 106.)

collective bargaining agreements ("CBAs") govern plaintiffs' terms of employment; (3) certain

plaintiffs' FLSA claims are time-barred; (4) certain named defendants do not qualify as

"employers" under the FLSA and NYLL; and (5) plaintiffs lack standing to pursue claims on

their own behalf or own behalf of the putative collective or class action.

For the reasons discussed below, defendants' motions to dismiss are GRANTED.

## FACTS AND ALLEGATIONS

1. Nakahata v. New York-Presbyterian Healthcare System, Inc., et al., No. 11 Civ. 6658

On September 23, 2011, plaintiffs Masahiro Nakahata, Diana Gardocki, and Cynthia

Delancy instituted this action against The New York Presbyterian Hospital ("NYPH"), The New

York Presbyterian Hospital System, Inc. ("System"), Dr. Herbert Pardes, and Mr. Wayne Osten.

Plaintiff Cynthia Delancy has since dropped out of this action.  Plaintiffs Nakahata and Gardocki

worked at NYPH's Columbia University Medical Center as registered nurses.  (Nakahata Compl.

¶¶ 71, 72.)  Nakahata was employed from July 14, 2000 through May 27, 2008, and "typically"

worked 34.5 hours a week, excluding time for which he was not compensated.  (Id. ¶ 71.)

"[A]pproximately twice a month," Nakahata worked an additional 11.5 hour shift.  (Id.)

Nakahata claims that he was not paid for work he performed during meal breaks and after his

shift ended, which amounted to "approximately 1 hour and 10 minutes per week."  (Id.)  He also

claims that he was not paid for attending basic life support and advanced cardiac life support

trainings, both of which occurred every two years, and lasted four and eight hours respectively.

(Id.)  Gardocki was employed from approximately September 1981 through January 2010, and

"typically" worked 37.5 hours a week, excluding time for which she was not paid.  (Id. ¶ 72.)

Gardocki "occasionally" worked an additional 7.5 hour shift.  (Id.)  Gardocki claims that she was

not paid for work she performed during meal breaks and after her shift, which amounted to "2 hours a week."  (Id.)  She also claims that she was not paid for attending trainings every two years, which lasted two hours.  (Id.)

Both Nakahata and Gardocki were employed under the terms of a CBA between NYPH and the New York State Nurses Association ("NYSNA"), which set forth comprehensive terms and conditions of their employment including salaries, entitlement to breaks, and mandatory grievance procedures.  (See id. Exs. B, C, D.)

2. Megginson v. Westchester Medical Center, et al., No. 11 Civ. 6657

Plaintiff Patricia Megginson instituted this action against Westchester County Health Care Corporation ("WCHCC"), Maria Fareri Children's Hospital at Westchester Medical Center, Westchester Medical Center, Mr. Michael D. Israel, and Mr. Paul S. Hochenberg.  From August 1, 1979 through February 4, 2010, Megginson worked as a registered nurse at WCHCC, where she "typically" worked 37.5 hours a week, excluding time for which she was not compensated. (Megginson Compl. ¶ 78.)  Approximately once a year, Megginson worked an additional 4 or 7.5 hour shift.  (Id.)  She claims that she was not paid for work performed during her meal breaks, before and after her shift, and for attending trainings, which amounted to approximately five to eight hours per week.  (Id.)  Megginson was a member of the NYSNA and subject to a CBA.

3. Alamu v. The Bronx-Lebanon Hospital Center, Inc., et al., No. 11 Civ. 6366

Plaintiffs Olusola Alamu, Jacqueline Cooper-Davis, and Alla Kozinskaia instituted this action against Bronx-Lebanon Hospital Center and its Fulton and Concourse Divisions (collectively "BLHC"), Mr. Miguel A. Fuentes, Jr., and Mr. Sheldon Ortsman.  From March 5, 2002 until February 1, 2008, Alamu worked as a registered nurse at BLHC-Fulton Division and BLHC-Concourse Division.  (Alamu Compl. ¶ 91.)  Throughout his tenure, Alamu worked either

37.5 hours or 34.5 hours per week, and worked an additional shift approximately twice a month. (Id.)  Alamu claims that he was not paid for work performed during meal breaks and after his shift ended, amounting to approximately 3.5 hours per week at BLHC-Fulton Division, and 7.5 hours per week at BLHC-Concourse Division.  (Id.)

From January 1999 through March 2006, Cooper-Davis worked as a license practical nurse for BLHC-Concourse Division, where she worked approximately 37.5 hours per week, excluding time for which she was not compensated.  (Id. ¶ 92.)  She claims that she was not paid for work performed during her meal breaks, 30 minutes before her shift began, an hour after her shift ended, and for attending training sessions, which amounted to approximately 8 additional hours per week when there were no trainings and 17.5 hours per week when there were trainings and meetings. (Id.)

From April 15, 2008 through November 14, 2009, Kozinskaia worked as a respiratory therapist for BLHC-Concourse Division, where she worked 23 hours per week, excluding time for which she was not compensated.  (Id. ¶ 93.)  Approximately once a month, Kozinskaia worked an additional shift.  (Id.)  She claims that she was not paid for work performed during her meal breaks, 45 minutes before each shift, 38 minutes after each shift, and for attending trainings and monthly staff meetings, which amounted to at least 3.5 hours per week when there were no trainings and up to 8.5 hours per week when there were staff meetings and a CPR training.  (Id.)

## DISCUSSION

A.  Legal Standard

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  A court need not accept

as true, however, "legal conclusions, deductions or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).

## B.  FLSA and NYLL Claims

"Under the FLSA, employees who work more than 40 hours per week must be compensated for each hour worked over 40 'at a rate not less than one and one-half times the regular rate at which he is employed.'" Young v. Cooper Cameron Corp., 586 F.3d 201, 204 (2d. Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)).  NYLL provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided" in the FLSA.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  As NYLL employs similar standards and relies on the FLSA, such claims are often analyzed together.  See Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 510 (E.D.N.Y. 2011).

To state a claim for a violation of the FLSA, plaintiffs must adequately plead that: (1) plaintiffs were employed by defendants; (2) defendants are engaged in commerce; and (3) defendants failed to pay plaintiffs for compensable hours worked.  29 U.S.C. § 207(a)(1). Plaintiffs claim that defendants, their employers, failed to compensate them for straight or gap time and overtime hours worked under defendants' unpaid meal breaks, unpaid pre- and post-shift, and unpaid training policies.

Defendants argue that plaintiffs' claims are insufficiently pled; named plaintiffs lack standing to raise their claims; plaintiffs' claims are barred by Section 301 of the LMRA; and certain defendants do not qualify as "employers."

1.  *Insufficient Pleading*

i.      The 40 Hour Threshold and Time-Barred Claims

In dismissing plaintiffs' prior complaints, the Court stated that an adequate complaint must allege "when the alleged unpaid wages were earned (*i.e.*, which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation," and plaintiffs' "dates of employment, pay, [and] positions."  Nakahata, 2011 WL 321186, at *4.  Moreover, the Court held that the FLSA does not cover gap-time claims,[2] and thus "[a]ny claims for unpaid regular (*i.e.,* non-overtime) wages . . . must be made under state labor law and/or the collective bargaining agreement."  Id. at *3.

While plaintiffs now allege the "typical" or "approximate" number hours per week they worked without proper compensation, they fail to allege the actual date for even a single instance of unpaid work, and do not distinguish between their unpaid regular hours, which are not

_____

[2] "'Gap time' refers to time that is not covered by the overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."  Adair v. City of Kirkland, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999).

compensable under the FLSA but are compensable under NYLL, and overtime hours.
Hintergerger v. Catholic Health Sys., No. 08 Civ. 945S (WMS), 2012 WL 125152, at *5
(W.D.N.Y. Jan. 17, 2012).  While plaintiffs are "not required to state every single instance of
overtime worked or to state the exact amount of pay which they are owed," DeSilva, 770 F.
Supp. 2d at 510, their allegations in many respects fall woefully short.

       Specifically, plaintiffs' allegations are insufficient to show that Kozinskaia and Gardocki
ever worked more than 40 hours a week.   Kozinskaia claims that she typically worked 23 hours
per week, and once a month picked up an additional shift to work 34.5 hours. (Alamu Compl. ¶
93.)  She claims that she was not compensated for work performed during meal breaks and pre-
and post-shift, which amounted to approximately 3.5 hours per week, and for attending a 1 hour
staff meeting once a month.  (Id.)  Incorporating this uncompensated time, Kozinskaia worked
between 26.5[3] and 39[4] hours per week, which is below the 40-hour threshold.  Gardocki alleges
that she "typically" worked 37.5 hours per week, for which she was compensated, and
"typically" worked an additional 2.5 hours per week—during her meal breaks, after her shift
ended, and in attending mandatory staff meetings—without proper compensation.  (Nakahata
Compl. ¶ 72.)  Gardocki thus claims to have typically worked 40 hours per week.  While
Kozinskaia and Gardocki claim that they attending a training every two years for four and two
hours respectively,[5] they do not provide any additional information to show whether these
trainings occurred during "typical" weeks, or weeks when they worked an additional shift, or
otherwise resulted in them working more than 40 hours per week.  See Acosta v. Yale Club of

---

[3]  This reflects weeks when Kozinskaia worked 23 hours, plus 3.5 hours during meal breaks and pre- and
   post-shift.
[4]  This reflects weeks when Kozinskaia worked 34.5 hours, plus 3.5 hours during meal breaks and pre-
   and post-shift, and attended a 1 hour staff meeting.
[5]  Kozinskaia claims that she attended the CPR training once every two years.  Given that she was
   employed for less than two years, from April 15, 2008 through November 14, 2009, the Court assumes
   that she attended one training session.

New York City, No. 94 Civ. 0888 (KTD), 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995)

(dismissing FLSA claim where "[p]laintiffs cite various instances when they worked several

extra hours in a given day," but "do not offer any examples of situations when management

employed them for more than 40 hours in a week without paying them overtime"); Davis v.

Abington Mem'l Hosp., No. 09 Civ. 5520 (CMR), 2012 WL 3206030, at *6 (E.D. Pa. 2012).

Moreover, while Gardocki also claims that she "occasionally" worked another shift, she does not

allege any facts to plausibly show how frequently this happened, and whether, if ever, this

resulted in her working more than 40 hours in a week without proper compensation. Wolman v.

Catholic Health Sys. of Long Island, No. 10-CV-1326 (JS)(ETB), 2012 WL 566255, at *11

(E.D.N.Y. Feb. 16, 2012) (dismissing overtime claim because "[w]hile Wolman asserts that she

'occasionally' worked an additional or extended shift, the [complaint] fails to state how often

this occurred or whether it ever resulted in unpaid overtime"). "Such inartful, conclusory

pleading will not defeat a motion to dismiss." Id. Kozinskaia and Gardocki's overtime claims

are thus dismissed.

Nakahata, Alamu, and Cooper-Davis's alleged dates of employment demonstrate that

their FLSA claims are time-barred. When the employers' acts are alleged to be willful the

statute of limitations for an FLSA claim is three years. See 29 U.S.C. § 255(a).[6]  Plaintiffs

instituted the NYPH and BLHC actions on September 13 and 23, 2011, respectively.   Nakahata

worked for NYPH from July 14, 2000 through May 27, 2008. (Nakahata Compl. ¶ 71.) Alamu

worked for BLHC from March 5, 2002 through February 1, 2008; and Cooper-Davis worked for

BLHC from January 1999 to March 2006. (Alamu Compl. ¶¶ 91, 92.) Since Nakahata, Alamu,

and Cooper-Davis were not employed by NYPH or BLHC during the three-year period prior to

filing suit, their FLSA claims are time-barred.

[6]   The NYLL statute of limitations, by contrast, is six years.  N.Y. Lab. Law § 663(3).

Plaintiffs, however, argue that equitable tolling applies.  "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," and should be applied only in "rare and exceptional" circumstances.  Lanzetta v. Florio's Enterprises, Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011) (quotations omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli–Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Plaintiffs' equitable tolling argument fails because they have not shown extraordinary circumstances warranting relief.  While Nakahata, Alamu, and Cooper-Davis acted with reasonable diligence in instituting the prior actions, after the Court dismissed these actions plaintiffs filed an appeal with the Second Circuit.  The viability of their timely FLSA claims is now a question for the Second Circuit.  Deferring to the Second Circuit's ruling is clearly not an "extraordinary circumstance" warranting equitable relief.   Plaintiffs have not otherwise proven, in these newly instituted actions, that their circumstances are extraordinary.  Accordingly, plaintiffs' arguments for equitable tolling are rejected, and Nakahata, Alamu, and Cooper-Davis's FLSA claims are dismissed.

In sum, Megginson is the only plaintiff whose FLSA and NYLL overtime time claims are adequately alleged and are not time-barred.

      ii.       <u>Rate of Pay and Standing</u>

A claim under the FLSA to recover unpaid minimum or overtime wages "should indicate the applicable rate of pay and the amount of unpaid minimum or overtime wages due."  Zhong v. August August Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007).  Plaintiffs failed to allege their rate of pay.  While this failure is not fatal in every case, see Sampson v. MediSys Health Network, Inc., No. 10 Civ. 1342 (SJF)(ARL), 2012 WL 3027850, at *7 (E.D.N.Y. Feb. 9, 2012), adopted in relevant part, 2012 WL 3027838, at *2 (E.D.N.Y. July 24, 2012), it is fatal here, as there are no factual allegations to show plaintiffs have standing to pursue their claims.

The FLSA and NYLL provide exemptions for employees employed "in a bona fide . . . professional capacity . . . ."  29 U.S.C. § 213(a)(1); N.Y. Comp. Codes R & Regs., tit. 12 § 142-2.14(c)(4)(iii)(a).  To qualify for the professional exemption, an employee must satisfy both a "salary" and "duties" test.  See 29 C.F.R. § 541.2.  The salary test is satisfied if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  Yourman v. Giuliani, 229 F.3d 124, 127-28 (2d Cir. 2000) (quoting then-29 C.F.R. § 541.118(a) (codified as amended at 29 C.F.R. § 541.602(a)).  The duties test analyzes whether the employee is engaged in a job that requires "advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.301(a).

"Registered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption."  Id. § 541.301(e)(2).  Accordingly, if named plaintiffs are salaried employees, then they are exempt from raising their FLSA and NYLL claims.

The Court previously instructed plaintiffs that: "A properly pleaded complaint must allege either that the plaintiffs are hourly employees or that plaintiffs, while salaried, were impermissibly treated as hourly employees when it benefited the defendant-employer, estopping him from invoking that exclusion."  See Nakahata, 2011 WL 321186, at *4, n.11.  Plaintiffs failed to follow the Court's instruction, preferring instead to allege only that all purported class members are hourly employees.  (See, e.g., Nakahata Compl. ¶¶ 7, 8.)  Before the Court considers whether the purported class members have a valid claim, however, "it must determine whether the Lead Plaintiffs have standing—whether 'they personally have been injured, not [whether] injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  Wolman, 2012 WL 566255, at *8 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)).

The complaints, however, do not specifically allege that *named* plaintiffs are hourly employees.  The CBAs, which are attached in limited part to the complaints,[7] suggest that plaintiffs were salaried employees.  For example, Megginson's CBA sets forth "salary schedules" for nurses (Rabinowitz Decl. Ex. 2), and Nakahata and Gardocki's CBAs state that an employee's base compensation rate, as that term is used in the CBA, reflects the "employee's salary exclusive of all differentials" (Nakahata Compl. Ex. D at 24).  Since named plaintiffs failed to allege any facts, such as their rate of pay, to plausibly show that they were hourly employees who were denied proper compensation under the FLSA and NYLL—in other words, actually injured—they do not have standing to raise their claims on behalf of hourly employees.

     iii.    Unpaid Meal Break Policy

---

[7] It is disturbing that Megginson attached the CBA in limited part, excluding the appendix that contained the salary schedule.  Since collective bargaining agreements are integral to the issues raised by the complaints, the Court will consider the remaining portions of the CBAs provided by defendants. See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir.1991).

Even if plaintiffs had standing to raise their claims, they have not adequately stated an FLSA or NYLL claim based on defendants' purported unpaid meal break policy. Under the FLSA and NYLL, bona fide meal periods are not considered work time. 29 C.F.R. § 785.19; N.Y. Lab. Law § 162. An employee, however, must be "completely relieved from duty" during the bona fide meal period, and "is not relieved if he is *required* to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19 (emphasis added).

Automatic meal deduction policies are not per se illegal, and employers utilizing such policies "may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." Wolman, 2012 WL 566255, at *8. "[A]n employer's failure to 'ensure' that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal." Id. "[O]nce an employer knows or has reason to know that an employee is working overtime, [however,] it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011).

Plaintiffs claim that they were not properly compensated for meal breaks that were "missed or . . . interrupted" under defendants' automatic meal deduction policies. (See, e.g., Nakahata Compl. ¶¶ 72, 112.) Plaintiffs claim that defendants "kn[e]w or should have known" that plaintiffs worked during their meal breaks because (a) defendants "permit, and often request, that such work be done by the employees during their unpaid meal breaks," and (b) defendants knew that employees received assignments that had to be completed by appointed deadlines, which required working during their meal breaks. (Id. ¶¶ 108-10).

Plaintiffs' complaints, however, are "void of any facts regarding the nature and frequency of these interruptions during the relevant time period or how often meal breaks were missed

altogether as opposed to just interrupted; thus the [complaints] ha[ve] failed to state a claim that these interruptions are compensable." Wolman, 2012 WL 566255, at *10.  Moreover, plaintiffs "do not allege that any employees were 'required' to perform any work during their off time. The only allegations in the complaint[s] that suggest an element of compulsion are utterly conclusory in nature." Manning, 2012 WL 1355673, at *5 (finding identical allegations were insufficient where plaintiffs failed to cite "a single example of such a 'request' made to any of the named plaintiffs (or to anyone else for that matter)" and do not "identify how many of the alleged unpaid hours of overtime, if any, were actually 'requested' by defendants").

Furthermore, plaintiffs failed to allege any facts plausibly suggesting that defendants knew or had reason to know that they *missed* their meal breaks.  While plaintiffs allege that "when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, defendants were ensuring that they were properly paying the Plaintiffs and Class Members," (see, e.g., Nakataha Compl. ¶ 170), plaintiffs have not alleged when, where, or between whom these alleged conversations took place.  Accordingly, plaintiffs' allegations regarding defendants' purported unpaid meal break policy are insufficient to state a claim under the FLSA and NYLL.

      iv.    Unpaid Pre- and Post-Shift Work Policy

While the FLSA provides that employees must receive overtime pay when they work more than 40 hours per week, "[t]he Portal–to–Portal Act modified the FLSA to provide that an employee need not be compensated for:

> activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

<u>Kosakow v. New Rochelle Radiology Assocs., P.C.</u>, 274 F.3d 706, 717 (2d Cir. 2001) (quoting 29 U.S.C. § 254(a)(2)).  Preliminary and postliminary work will only be compensable where it is "an integral and indispensable part of the principal activity of the employment."  <u>Id.</u> Plaintiffs allege that the work they performed before and/or after their shifts included, <u>inter alia</u>, checking on patients, locating and gathering equipment and supplies, giving reports, completing charting, or tending to emergencies.  (Nakahata Compl. ¶¶ 72, 73; Megginson Compl. ¶ 78; Alamu Compl. ¶¶ 91-93).  Accepting plaintiffs' allegations as true, as the Court must, the Court can infer that some of the activities plaintiffs performed were an integral part of their jobs.  <u>See</u> <u>Sampson</u>, 2012 WL 3027850, at *8.  Accordingly, plaintiffs' FLSA and NYLL unpaid pre- and post-shift work claims are adequately pled.

    v.  Unpaid Training Policy

    Attendance at training programs is generally counted as working time under the FLSA. <u>See</u> <u>Wolman</u>, 2012 WL 566255, at *10 (citing <u>Chao v. Tradesmen Int'l</u>, 310 F.3d 904, 906 (6th Cir. 2002)).  The time an employee spends at "lectures, meetings, training programs and similar activities," however, "need not be counted toward that employee's hours worked where: (1) Attendance is outside of the employee's regular working hours; (2) Attendance is in fact voluntary; (3) The course, lecture, or meeting is not directly related to the employee's job; and (4) The employee does not perform any productive work during such attendance."  <u>Kosakow</u>, 274 F.3d at 721 (citing 29 C.F.R. § 785.27).  Plaintiffs allege that Gardocki attended a CPR training every two years, which lasted two hours (Nakahata Compl. ¶ 72); Nakahata attended basic life support and advanced cardiac life support trainings every two years, which lasted four and eight hours, respectively (<u>id.</u> ¶ 71); Megginson attended an Infectious Control Training every five years, which lasted two hours (Megginson Compl. ¶ 78); and Cooper-Davis and Kozinskaia

attended CPR training every two years, which lasted eight and four hours, respectively (Alamu

Compl. ¶¶ 92, 93.)  Plaintiffs allege that "[o]ften these training activities occurred during regular

working hours; were required by defendants; were led by defendants; [ ] were directly related to

their positions with defendants" and required active participation from the hospital employees.

(See, e.g., Nakahata Compl. ¶ 144.)  "While these allegations were clearly designed to address

the various prongs of the regulation," the Court must accept the allegations as true, and finds

Nakahata, Gardocki, Megginson, Cooper-Davis, and Kozinskaia's FLSA and NYLL unpaid

training time allegations are adequately pled.  Sampson, 2012 WL 3027850, at *9.

    C.  Preemption Under the Labor Management Relations Act ("LMRA")

Even if plaintiffs had standing to raise their claims, Section 301 of the LMRA bars

plaintiffs' NYLL claims for unpaid pre- and post-shift work and unpaid trainings.[8]

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an industry affecting commerce [ ]

may be brought in any district court of the United States having jurisdiction of the parties." 29

U.S.C. § 185(a).  Section 301 "mandate[s] resort to federal rules of law in order to ensure

uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable

consistent resolution of labor-management disputes."  Lingle v. Norge Div. of Magic Chef, Inc.,

486 U.S. 399, 404 (1988).

"Section 301 [preempts state-law] claims founded directly on rights created by collective

bargaining agreements, and also claims 'substantially dependent upon an analysis of a collective

bargaining agreement.'"  Id. at 410 n.10 (quoting Electrical Workers v. Hechler, 481 U.S. 851,

---

[8]  WCHCC argues that as a public benefits corporation it is not bound by the LMRA but rather is bound
by New York's Taylor Law.  It argues that the Taylor Law preempts or precludes plaintiffs' claims for
the same reason the LMRA preclude plaintiffs' claims.  Accordingly, the Court's analysis of the LMRA
equally applies to WCHCC.

859 n.3 (1989)). "When a claim derives from an independent, substantive provision of state law, [however,] preemption has no application." Hintergerger, 2008 WL 5114258, at *5 (citing Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) ("In [Allis-Chalmers Corp. v.] Lueck, [471 U.S. 202 (1985)], and in Lingle[, 486 U.S. 399,] we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement [ ] that decides whether a state cause of action may go forward.")).

There is no independent statutory right under the NYLL for work performed pre- and post-shift and for attending trainings. Thus, "Plaintiffs' NYLL claims—for unpaid wages and overtime—[based] on allegations of unpaid preliminary and postliminary work, and unpaid training time . . . are not 'independent' of the CBA." Id. at *6. "As a result, Plaintiffs' NYLL claims based on such allegations will require substantial interpretation of the CBA and are therefore preempted." Id.

D. Plaintiffs' Employers

Finally, plaintiffs have not adequately pled that each defendant qualifies as their "employer" under the FLSA and NYLL.[9] The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "To determine whether an entity or an individual is an 'employer' under the FLSA, courts look to the 'economic reality' of the employment relationship instead of a common-law conception of agency." Wolman, 2012 WL 566255, at *4 (internal citation omitted); see Goldberg v. Whitaker House Corp., Inc., 366 U.S. 28, 33 (1961). First, courts "examine the

---

[9] "Because the FLSA and New York Labor Law employ similar standards with respect to employment status, [the economic reality] test has been used to analyze both federal and state wage claims." Cannon v. Douglas Elliman, LLC, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007) (citing cases).

degree of formal control exercised over a worker," <u>Barfield v. New York City Health and Hosp.</u> <u>Corp.</u>, 537 F.3d 132, 143 (2d Cir. 2008), by considering whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  <u>Carter v. Dutchess Cmty. Coll.</u>,735 F.2d 8, 12 (2d Cir. 1984).

"If a court finds that a putative employer does not exercise formal control over a worker, it must then assess whether the entity 'nevertheless exercised functional control over a worker,' by considering (1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work, and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant."  <u>Wolman</u>, 2012 WL 566255, at *4 (quoting <u>Barfield</u>, 537 F.3d at 143).  No one factor is dispositive; a court is "free to consider any other factors it deems relevant to its assessment of the economic realities."  <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 71-72 (2d Cir. 2003); <u>Wolman</u>, 2012 WL 566255, at *4.

1. *System, Maria Fareri Children's Hospital at Westchester Medical Center, and Westchester Medical Center*

Plaintiffs have not satisfied the economic reality test with respect to System, Maria Fareri Children's Hospital at Westchester Medical Center, and Westchester Medical Center.  "To establish that these medical centers are employers under the FLSA . . . Plaintiffs must . . . connect these Defendants to the allegations of wrongdoing or show that these medical centers exert significant control over the employment of the named Plaintiffs."  <u>Davis</u>, 2012 WL

3206030, at *5.  Plaintiffs have not, however, shown that these entities had the power to hire and

fire named plaintiffs, or actually supervised and controlled their work, determined their rate of

pay, or maintained employment records.  <u>Sampson</u>, 2012 WL 3027838, at *4 (dismissing similar

claim where "[t]here [were] no facts that indicate that MediSys had any direct role in hiring or

firing the plaintiffs or that it supervised or controlled their work schedules" . . . and there were

"no facts that indicate that MediSys had any direct role in controlling the plaintiffs' conditions of

employment or in determining their rate and method of payment").[10]

     Plaintiffs also failed to satisfy the functional control test.  Plaintiffs claim that System and

NYPH, and Maria Fareri Children's Hospital at Westchester Medical Center, Westchester

Medical Center, and WCHCC are "integrated enterprises."  Specifically, plaintiffs allege these

defendants "constitute[ ] an integrated comprehensive, consolidated" health care system

(Nakahata Compl. ¶ 33; Megginson Compl. ¶ 35); have common ownership (Nakahata Compl. ¶

32; Megginson Compl. ¶ 34); and their employees are directed by common management,

including oversight and management by a senior executive team and board of directors

(Nakahata Compl. ¶ 30; Megginson Compl. ¶ 29).  The Court, however, need not accept

plaintiffs' legal or conclusory allegations as true.  <u>See</u> <u>Sampson</u>, 2012 WL 3027838, at *4.

     Defendants "cannot be held liable merely because they have common ownership or are

otherwise part of a common enterprise wherein some entities are employers of the named

Plaintiffs."  <u>Davis</u>, 2012 WL 3206030, at *5; <u>Wolman</u>, 2012 WL 566255, at *5 (holding that

"Plaintiffs' assertions that Defendants are an 'integrated enterprise', 'have common ownership',

and are 'engage[d] in a joint venture' are similarly insufficient" to show that defendants were

plaintiffs' employers).  At most, these allegations show that these entities are members of a

---

[10] System could not be plaintiffs' employer because it is a not-for-profit that is expressly not authorized to provide hospital or health-related services.  (<u>See</u> Osten Aff. ¶ 2 & Ex. A.)

hospital network or system, which is insufficient.  <u>Sampson</u>, 2012 WL 3027838, at *5.  Plaintiffs

also allege that WCHCC's labor relations and human resources are centrally located and

controlled (Megginson Compl. ¶33); and defendants employ a single Vice President of Human

Resources (<u>id</u>.).  While these allegations "may suggest some kind of affiliation among the

[WCHCC] defendants," they are insufficient to show that each defendant is liable for plaintiffs'

compensation.  <u>Sampson</u>, 2012 WL 3027838, at *4.

        Plaintiffs have not alleged any other plausible fact to satisfy the functional control test.

For example, plaintiffs have not alleged that they ever shifted locations or employers, or used

materials from another location, or otherwise alleged facts to plausibly show that System, Maria

Fareri Children's Hospital at Westchester Medical Center, or Westchester Medical Center had

and exercised control over them.

        Having failed to satisfy either the economic reality or functional test, plaintiffs have not

adequately alleged that System, Maria Fareri Children's Hospital at Westchester Medical Center,

or Westchester Medical Center were their "employers" under the FLSA or NYLL.  Accordingly,

these defendants are dismissed from these actions.

    2.  *Individual Defendants: Dr. Pardes, Mr. Osten, Mr. Israel, Mr. Hochenberg, Mr.*
        *Fuentes, Jr., and Mr. Ortsman*

        Dr. Pardes is the President and CEO of System and Mr. Osten is the Senior Vice

President of System, and both allegedly had "operational control" over System, the authority to

make "employment decisions" concerning hirings and firings, and were "involved in the creation

and/or maintenance of the illegal policies." (Nakahata Compl. ¶¶ 42, 43, 45-48, 53, 57, 64, 66,

67.)  Mr. Israel is the President and CEO of Westchester Medical Center, Mr. Hochenberg is the

Senior Vice President of Human Resources for Westchester Medical Center, and both allegedly

had "operational control" over Westchester Medical Center, the authority to make "employment

decisions" concerning hirings and firings, employees' schedules and hours, and were "involved in the creation and/or maintenance of the illegal policies" (Megginson Compl. ¶¶ 44, 47, 48-53, 56, 57, 61-70, 74.)  Mr. Fuentes is the President and CEO of BLHC, and Mr. Ortsman is the Vice President of Human Resources.  (Alamu Compl. ¶¶ 41, 62.)  Both allegedly had "operational control" over BLHC, the authority to make "employment decisions" concerning hirings and firings, employees' schedules and hours, and were "involved in the creation and/or maintenance of the illegal policies."  (Id. ¶¶ 41, 44, 49-59, 63-88.)

These allegations are "nothing more than conclusory allegations designed to satisfy the economic reality test."  Sampson, 2012 WL 3027850, at *15-16 (recommending dismissal of nearly identical allegations as insufficient to show individual defendants were plaintiffs' employer).  While plaintiffs repeatedly allege that these individual defendants had the "authority" to make employment decisions, "upon careful analysis, the complaint asserts little more than because [the individual defendants held positions as directors and officers], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions."  Tracy v. NVR, Inc., No. 04–CV–6541L (MWP), 2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009), adopted in relevant part, 667 F. Supp. 2d 244.  "To accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds."  Id.

Plaintiffs have not alleged sufficient facts to support their conclusory assertions.  "The individual sought to be held liable cannot be just any employee with some supervisory control over other employees and must be instrumental in causing the corporation to violate the FLSA."  Manning, 2012 WL 1355673, at *2 (quotations omitted).  Plaintiffs have not alleged facts to

plausibly show that the individual defendants knew of, let alone created or maintained, the

purported unlawful policies.  Indeed, plaintiffs have not alleged sufficient facts to show that

System and Westchester Medical Center qualify as plaintiffs' employers, as discussed above, and

thus there can be no plausible suggestion their employees—Dr. Pardes, Mr. Osten, Mr. Israel,

and Mr. Hochenberg—set the relevant policies or otherwise qualify as plaintiffs' employers here.

Moreover, plaintiffs have not alleged any facts to show that any of the individual defendants ever

hired, fired, or made any decisions regarding named plaintiffs' schedules and hours, or otherwise

supervised "the workers in question."  See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139

(2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power

to control the workers in question." (citation omitted)).  Indeed, the complaints are devoid of any

facts that show any of these individual defendants had direct contact with named plaintiffs.  See

Tracy, 2009 WL 3153150, at *4 ("Generally, corporate officers and owners held to be employers

under the FLSA have had some direct contact with the plaintiff employee, such as personally

supervising the employee's work, including determining the employee's day-to-day work

schedule or tasks, signing the employee's paycheck or directly hiring the employee." (collecting

cases)).  Plaintiffs have thus failed to show that these individual defendants qualify as their

"employers."  Accordingly, all claims against Dr. Pardes, Mr. Osten, Mr. Israel, Mr.

Hochenberg, Mr. Fuentes, and Mr. Ortsman are dismissed.

   *3.  WCHCC*

   WCHCC claims it is exempt from all NYLL overtime claims because it qualifies as a

political subdivision of New York State.  Plaintiffs raise their NYLL claims under N.Y. Lab.

Law. §§ 190(8), 191 et seq., and N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  The actionable

overtime claims are raised under tit. 12 § 142-2.2;[11] however, tit. 12 § 142-2.14 provides that

"employee" under the statute does not include "any individual employed by a Federal, State or

municipal government or political subdivision thereof." Id. § 142-2.14.[12]

While WCHCC is a public benefits corporation, this fact "does not automatically render

it a political subdivision" of the state. Drayton v. MetroPlus Health Plan, Inc., 791 F. Supp. 2d

343, 346 (S.D.N.Y. 2011). Rather, New York courts engage in a "particularized inquiry into the

nature of the [organization] and the statute claimed to be applicable to it," Long Island R. Co. v.

Long Island Lighting Co., 479 N.Y.S.2d 355, 361 (2d Dept. 1984), "to determine whether—for

the specific purpose at issue—the public benefit corporation should be treated like the State" for

"perform[ing] an essential government function." Clark–Fitzpatrick, Inc. v. Long Island R. Co.,

516 N.E.2d 190, 191-92 (N.Y. 1987). "Similarly, in determining whether an entity is a political

subdivision under the New York Labor law, New York Courts must evaluate 'the nature of the

employing organization.'" Drayton, 791 F. Supp. 2d at 346 (quoting Faculty Student Ass'n of

State Univ. of Oneonta, Inc. v. Ross, 430 N.E.2d 1258, 1260 (N.Y.1981)).

In Drayton, the Court found that New York City Health and Hospitals Corporation

("HHC"), a public benefits corporation, was a political subdivision of New York State such that

it was exempt from liability for NYLL overtime claims. The Court based its holding on the

following considerations: (1) the State legislature constituted HHC to perform the "essential

public and governmental function . . . [of] provid[ing] and deliver[ing] comprehensive care and

---

[11]  Section 190(8) defines "week" and "month"; Section 191 deals only with the timing, not the amount, of payment; Section 193 deals with the deduction of wages; and Section 198 deals with remedies for wage violations. See N.Y. Lab. Law §§ 190, 191, 193, 198. These sections do not create any substantive entitlement to a particular wage, except for the wage already agreed upon. Moreover, Section 190(3) expressly states that "[t]he term 'employer' shall not include a governmental agency." N.Y. Lab. Law. § 190(3). Accordingly, even if these sections governed plaintiffs' overtime claims, these provisions still might not apply against WCHCC, which is a public benefits corporation.

[12] The FLSA expressly includes "any individual employed by a . . . political subdivision of a State" within its coverage. 29 U.S.C. § 203(e)(2)(C).

treatment of the ill and inform," which "is in all respects for the benefit of the people of . . . New York"; (2) "HHC receives a substantial amount of financial support from public sources of funding"; and (3) New York and federal case law that established that the HHC is considered a government entity and a political subdivision in a wide variety of contexts. Id. at 346-47 (quotations omitted).[13]

WCHCC was likewise created by the State legislature to perform "an essential public and governmental function" of "provid[ing] health care services and health facilities for the benefit of the residents of the state of New York and the county of Westchester, including persons in need of health care services without the ability to pay as required by law." N.Y. Pub. Auth. § 3301(5).[14] WCHCC, which runs the Westchester Medical Center, provides an essential government function as it runs the only tertiary facility, the only burn unit, the only academic center, and the only trauma center in Westchester County. While there is no evidence to show that WCHCC receives a substantial amount of financial support from public source funding, it is treated as a government entity for many purposes. Specifically, "WCHCC is entitled to the same status, for purposes of the state action immunity analysis, as a municipality." LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 477 (2d Cir. 2009). WCHCC has also been treated as a "governmental agency" for purposes of medical malpractice suits. See Yassin v. Sarabu, 727 N.Y.S.2d 620, 621 (2d. Dept. 2001). WCHCC's employees enjoy the protections and obligations of Civil Service laws. N.Y. Pub. Auth. § 3304. The WCHCC is subject to the

---

[13] Specifically, HHC is covered by the National Labor Relations Act; its employees enjoy the protections and obligations of New York's Civil Service Laws; HHC is subject to New York City Collective Bargaining Law; the New York Court of Appeals held that the HHC cannot lease a hospital to a private entity; HHC has been held exempt from antitrust liability under the state action doctrine; HHC's employees qualify as "public servants" under the penal code; HHC is a government entity for purposes of New York's Freedom of Information Law; and HHC is governed by notice of claim provisions. Id.

[14] It is "well established that a district court may rely on matters of public record in deciding a motion to dismiss under rule 12(b)(6)." Parks v. Town of Greenburgh, 344 F. App'x 654, 656 (2d Cir. 2009) (summary order).

Freedom of Information Laws and Open Meeting provisions of Public Officers Law. See N.Y.

Pub. Officers Law §§ 86, 102. WCHCC is entitled to notice of claims. N.Y. Pub. Auth. § 3316.

In addition, of WCHCC's fifteen voting directors, eight are appointed by the Governor and seven

are appointed by the legislature of Westchester County. Id. § 3303.

Accordingly, the Court finds the WCHCC is properly considered a public subdivision of

New York State and thus is exempt from liability for NYLL overtime claims. Megginson's

NYLL claims against the WCHCC are thus dismissed.

## CONCLUSION

Plaintiffs' complaints fail for a number of reasons: plaintiffs lack standing to raise FLSA

or NYLL claims on behalf of hourly employees; plaintiffs Kozinskaia and Gardocki's FLSA and

NYLL overtime claims otherwise fail to state a claim; plaintiffs Nakahata, Alamu, and Cooper-

Davis's FLSA claims are time-barred; plaintiffs' FLSA and NYLL claims for unpaid meal

breaks are insufficiently pled; plaintiffs' gap time and overtime NYLL claims for work

performed pre- and post-shift and during trainings are preempted by Section 301 of the LMRA;

plaintiffs failed to adequately allege that System, Maria Fareri Children's Hospital at

Westchester Medical Center, Westchester Medical Center, Dr. Pardes, Mr. Osten, Mr. Israel, Mr.

Hochenberg, Mr. Fuentes, Jr., and Mr. Ortsman qualify as their "employers" under the NYLL or

FLSA; and the WCHCC is exempted from NYLL liability as a political subdivision of New

York State. Accordingly, defendants' motions to dismiss are GRANTED.

The Clerk of Court is directed to terminate these motions 11 Civ. 6658 Dkt. Nos. 18, 22;

11 Civ. 6657 Dkt. No. 9; 11 Civ. 6366 Dkt. No. 15, enter judgment, and close these cases.

Dated: New York, New York
     September 6, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge

25